Shafqaat Bukhari
9416 Canalino Dr
Las Vegas, NV 89134
In Common Law-Pro Per
702-845-0107

2010 JUN -1  A 10: 35

## DISTRICT COURT OF UNITED STATES

## DISTRICT OF LAS VEGAS NEVADA

### ARTICLE III

2:10-cv-00823-GMN-RJJ

Shafqaat Bukhari,

Plaintiff,

VS

LENDING 1ST MORTGAGE, EMC MORTGAGE
CORPORATION, CHASE, NATIONAL
DEFAULT SERVICING CORPORATION,
LAND AMERICA LAWYERS TITLE,
LAWYERS TITLE OF NEVADA, MORTGAGE
ELECTRONIC REGISTRATION SYSTEM
"MERS", ASSIGNEES AND/OR SUCCESSORS, AND
DOES 1-10

Defendants,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

VERIFIED COMPLAINT FOR MONETARY
DAMAGES, PUNITIVE DAMAGES,
EMERGENCY INJUNCTIVE RELIEF, QUIET
TITLE, BREACH OF FIDUCIARY DUTY,
FRAUD AND DECEIT - INTENTIONAL
MISREPRESENTATION OF FACT, FRAUD
AND DECEIT - SUPPRESSION OF FACTS,
FRAUDULENT OMISSIONS COGNOVIT
NOTES, UNFAIR DEBT COLLECTION
PRACTICES, UNJUST ENRICHMENT,
SLANDER OF TITLE, TO SET ASIDE A
DEFECTIVE AND WRONGFUL
FORECLOSURE, DECLARATORY
RELIEF,ETC..

JURY TRIAL DEMANDED

### EXPRESSION OF THE TRUSTS

WITHOUT WAIVING ANY RIGHTS, REMEDIES, OR DEFENSES, WHEREAS SHAFQAAT
BUKHARI , LIVING SOUL, IS COMPETENT WITH INTENT AND PURPOSE AS CREATORS
/ GRANTORS / SETTLORS [1] OF THE EXPRESSED REVOCABLE, MODIFIABLE TRUSTS
ESTABLISH ON MAY 10, 2006, THROUGH LENDING 1ST MORTGAGE. IN CONJUNCTION
WITH ACCOUNT/LOAN NUMBER #0015289036 (ORIGINAL# 0000004524) , VIA THE
PROMISSORY NOTE AND MORTGAGE AT ISSUE DATED MAY 10. 2006, IN WHICH THE
GRANTOR IS THE SOLE MAKER AND ISSUER THEREOF, AND SUBSEQUENTLY FOR
DEFENDATNST IN THE TRUSTS..

1 Unlawful or Illegal purpose: In construing trust, unlawful purpose should not be imputed to settlor. *Hawthorne v. Smith,* 7 N.E. 2d 139,273 N.Y. 291. Purposes for which trusts maybe created "The intent and purpose ofthe settlor of the truth is the law of the trust" *Edmonson v. First Nat. Bank of Birmingham,* 55 So. 2d 338, 352, 256, Ala. *449; Ingalls v. Ingalls,* 54 So. 2d 296,301,256 Ala. 321; *Thurlow v. Berry,* 32 So. 2d 526,532,249 Ala. 597.

SHAFQAAT BUKHARI, GRANTOR AND AUTHORIZED AGENT, IS NOW COMING FORTH AS THE BENEFICIARIE IN THE ABOVE-NAMED ACTION IN GOOD FAITH ALLEGES AS FOLLOWS:

## INTRODUCTIONI PARTIES

1.    **PARTY #1**: SHAFQAAT BUKHARI, (hereafter "Plaintiff"), reside at 9416 Canalino Drive, Las Vegas Nevada 89134 which is a parcel of Real Property.

2.    The undersigned have previously declared, without opposition, that he is the grantors of the trusts regarding the Note and Mortgage in this matter;

3.    The undersigned has previously declared, without opposition, that he has revoked all powers of attorneys of the trusts regarding the Note and Mortgage in this matter that Defendant have been using against Plaintiff's interests;

4.    The undersigned has previously declared, without opposition, that the undersigned has revoked their construed status as trustees or co-trustees of the trusts regarding the Note and Mortgage in this matter.

5.    Plaintiff seeks emergency injunctive relief, declaratory relief, actual economic and non-economic damages, fees, and costs.

6.    **PARTY #2 ALL DEFENDANTS**:. LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION, LAND AMERICA LAWYERS TITLE, LAWYERS TITLE OF NEVADA, MORTGAGE ELECTRONIC REGISTRATION SYSTEM "MERS", ASSIGNEES AND/OR SUCCESSORS, AND DOES 1-10

## JUDICIAL NOTICE/COGNIZANCE[2] WITH CLAIM OF RIGHTS

7.    All parties and officers of the court of Hennepin County, Minnesota are hereby placed on NOTICE under authority of the supremacy, due process and equal protection clauses of the United States Constitution and the common law authorities of *Hughes v. Rowe, 449* U.S. 5 (1980); *Haines v. Kerner,* 404 U.S. 519 (1972); *Platsky v. C.I.A.* 953 F.2d. 26 (2nd Cir. 1991); *Anastasoff v. United States,* 223 F.3d 898 (8th Cir. 2000); and *Trinsey v. Pagliaro,* 229 F. Supp. 647, 649 (D.C. Pa. 1964) and similar cases noted herein.

8.    *Rowe* and *Haines* collectively states that courts *must not* hold *pro se* litigants to the same standards as a lawyer of the bar regarding procedure, etc.; that courts are to "liberally construe" *pro se* litigant's submissions and to make "reasonable allowances" due to their lack of legal training. Accordingly, if there are any defects in Plaintiffs moving papers, Plaintiff respectfully requests that the Court interpret said defects and render a proper and just decision, or point out the defects for correction and grant permission and provide sufficient time to re- file said paperwork rather than penalizing my motion for procedure or other errors due to the undersigned's lack of lega! training.

9.    In *Platsky:* a court errs if the court dismisses the *pro se* litigant without instruction of how pleadings are deficient and how to repair pleadings.

10.   Regarding *Anastasoff.* Plaintiff hereby invokes the powers and protections of *Anastasoff,* Part II and Part III of the decision especially, wherein it speaks to the historical underpinnings of the Doctrine of Precedence. Litigants' constitutional rights are violated when courts depart from precedent where parties are similarly situated. All litigants have a right to have their claims adjudicated according the rule of precedent.

11.   Attorney cannot testify or authenticate evidence for their client: An attorney's affirmation or testimony generally cannot advance substantive proof. Moreover, counsel for Defendant cannot testify or plea for its client[3] nor can counsel authenticate any

---

2 JUDICIAL COGNIZANCE - Judicial notice or knowledge upon which a judge is bound to act without having it proved in evidence. *(Black's Law Dictionary,* 5th Edition, page 760; *Black's Law Dictionary,* 3rd "cognizance" page 346), *see also,* JUDICIAL NOTICE pursuant to CPLR § 4511.

3 It is well established that statements of counsel of alleged facts are not sufficient to establish facts or evidence in the case for its client. See *Trinsey v. Pagliaro,* 229 F. Supp. 647, 649 (D.C. Pa. 1964) ("The defendants' motion to dismiss for failure to state a claim unsupported by affidavits or depositions is incomplete because it requests this Court to consider facts outside the record which have not been presented in the form required by Rules 12(b) (6) and 56(c). *Statements of counsel in their briefs or argument while enlightening to the Court are not sufficient for*

document in this case regarding the alleged mortgage transaction since counsel has no personal knowledge of any alleged transaction in this matter. 4

12. The Court must strike any alleged fact advanced by counsel that is not supported by an affidavit or other authenticated document from Defendant or by Defendant's corporate representative that is a competent fact witness with personal knowledge of the claims, facts and documents (to authenticate) employed by Defendant in this matter.

13. Plaintiff hereby claims all of their rights at all times and waive none of them at any time for any cause or reason.

14. Plaintiff expressively disavows all waivers of any rights that were not made upon previous actual notice in the matters at hand.

15. That any affidavit, verification or declaration made by the undersigned is admissible into the *evidence* record in this matter and shall only be refuted by a rebuttal affidavit or by testimony in court under oath by Defendant or its representative with personal knowledge of the matter.

16. Plaintiff hereby invokes the powers and protections of the and the Constitution and Bill of Rights of the United States of America.

17. Plaintiff invokes the protection of the Constitution and Bill or Rights of the State of Nevada.

18. Plaintiff hereby invokes Judicial NOTICE that this Court accord the public statues of the United States and of every state and jurisdiction of the United States and judicial judgments/decisions of the United States and of various states and jurisdictions of the United States cited herein the full faith and credit that Article IV, Section I of the united State Constitution commands; that Plaintiff claims the due process and equal protection under those favorable statutes and decisions outside of Minnesota.

---

purposes of granting a motion to dismiss or summary judgment." [emphasis added]); see also, *Loomis, In re, 587* N.W.2d 427,438 (S.D., 1998) ("Attorneys cannot testify on behalf of their clients"); *Estes v. Millea,* 464 N.W.2d 616, 619 (S.D. 1990) ("[A]n attorney cannot testify on behalf of his client [citations omitted]. Further, the communication with the circuit court was not in the form of an affidavit nor under oath. It was merely argument in a trial brief. *This is clearly not evidence* and, thus, Williams' interrogatory answer stands uncontradicted .... " [emphasis added]); *Amos v. Cohen,* 2004-0hio-1265, ~7 ("Because the roles of advocate and witness are inconsistent, it is generally inappropriate for a trial attorney to testify on behalf of the client").

4 See, e.g., *Key Bank of Me. v. Lisi,* 225 AD2d 669,669 (2d Dept 1996) ("affirmation of ... attorney who had no personal knowledge of the facts ... did not constitute proof in admissible form and it [is] without evidentiary value")).

19.   Plaintiff hereby claims and invokes the powers, protections and benefits of the Statute of Frauds, especially where it speaks to the fact that in order to sue and receive a judgment, a claim of debt MUST BE PROVEN. The only way to prove the existence of a debt is by admissible evidence, in open court on the record, through the testimony, under oath, of a competent fact witness with firsthand knowledge and subject to cross examination. The alleged creditor must prove, with original documentation, that it is the Holder In Due Course and that the alleged debtor signed the document.

20.   Failure of Defendant to admit or deny any averment in this complaint shall be deemed an admission.

## JURISDICTION AND VENUE

21.   This action concerns real property legally described as LOT 64  IN BLOCK 1 OF MISSION / HORIZON – UNIT 2, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 113 OF PLATS, PAGE 39 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA ; PROPERTY IDENTIFICATION NUMBER: 179-31-214-029 .

22.   Venue/jurisdiction is proper in Clark County, Nevada, because all or a substantial portion of the cause of action arose in Clark County.

## GENERAL FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

23.   On MAY 10, 2006, regarding the instant matter, a Promissory Note was executed by the undersigned on behalf of Defendants.

24.   The undersigned was not informed by, LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION that the loan (Note and/or Mortgage) was destined to become part of a securitized pool of mortgages/notes and asset backed securities.

27. LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION never explained to the undersigned the full terms of the alleged loan and what was to happen to the Note /Mortgage after closing.

28. The undersigned were rushed when signing the "loan" documents.

29. The closing process provided no adequate time for review and took minutes to accomplish.

30. The undersigned could not understand any of the documents and signed them based on representations and the trust and confidence Plaintiff had placed in Defendant's predecessors.

31. The Note and Mortgage are contracts that were not open to any negotiations or changes.

32. The undersigned avers that the Note and Mortgage are contracts of adhesion.

33. LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION did not give Plaintiff any consideration or any other substantial benefit in order to obtain any confessions of judgment (i.e., cognovit note clauses) contained in the Note and Mortgage.

34. There is no contention or acknowledgment that the undersigned were aware of the legal (detrimental) consequences of the cognovit provisions of the Note and Mortgage.

35. The undersigned did not voluntarily, intelligently and knowingly waive any due process rights when signing the Note and Mortgage.

36. The undersigned, as laypersons, did not have the advice of competent counsel when the Note and Mortgage were signed.

37. The undersigned is informed and believes that Defendant and Defendant's predecessor established and implemented the policy of failing to disclose material facts and terms about the alleged "loan" to alleged borrowers.

38. In the Mortgage, LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, is designated as the "Lender" and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (hereinafter "MERS") is acting as a nominee for the "Lender," and that MERS is the mortgagee under the Mortgage.

39. On MAY 10, 2006, the Mortgage was recorded in the COUNTY OF CLARK COUNTY RECORDERS OFFICE (Document No.20060510-0003057).

40.   The undersigned sent a Notice regarding its attempt to serve a NOTICE OF FORECLOSURE SALE dated MAY 13, 2010, on Plaintiff. In relevant part, the undersigned, after spending time studying financial matters regarding the mortgage industry and having discussions with knowledgeable people regarding the origination of the purported "loan" in question, the undersigned has discovered that there has been fraud in various forms including a counterfeit copy of the Promissory Note presented as proof of claim by a certain group of people to foreclose on the Note, Mortgage and the Property, including, but not limited to, agents of the alleged original lender, Defendant and attorneys working with Defendant.

41.   The undersigned submits that there was an intentional effort to steal Plaintiff's property unlawfully through foreclosure process by the use of a counterfeit security as evidence of a purported debt, and the undersigned submits there are multiple individuals involved in this crime.

42.   The undersigned has made additional debt verification/validation demands that the individuals/entities involved to provide verifiable proof of claim through various demands to prove that Defendant is, in fact, the owner and holder in due course of the purported obligation.

43.   Defendant and its agents have failed to comply with applicable Federal Law and the Uniform Commercial Code ("UCC") and have refused to provide such proof to the undersigned.

44.   The Promissory Note sent to the undersigned, after repeated requests, does not show proof that the Defendant is the holder in due course.

45.   Defendant's name is not on the Promissory Note.

46.   There was no proof provided that the Note was assigned to Defendant via negotiation.

47.   There is no proof in the public record that the Note was assigned to Defendant.

48.   There is no proof in the public record that Defendant is holding or possesses the Note.

49.   There is a fatal flaw in the chain of title regarding the Mortgage.

50. An Affidavit of Assignment, a Corporate Resolution or a Limited Power of Attorney does not accompany the Assignment of Mortgage to establish that the person who allegedly assigned the mortgage actually had authority to do so.

51. The Property was set for trustee sale for June 08, 2010.

52. Defendant has non-judicially foreclosed on the Note, Mortgage and real property in accordance with the presumption that the "confession of judgment" clauses (hereafter cognovit clauses) in the Note and Mortgage are and were valid.

53. Upon information and belief, the wrong person/entity has foreclosed on Plaintiffs property.

54. Defendant has never demonstrated that it had the authority to foreclose.

55. The Holder in Due Course of the original Promissory Note and Mortgage is the only party authorized to foreclose.

56. Due to the nature of the "securitization process," the Holder in Due Course has not been identified.

57. Upon information and belief, pursuant to the information the undersigned has learned about the securitization process, it is virtually impossible for Defendant to produce the original Note and Mortgage in this matter since said documents have been pooled and commingled with thousands of the other securities in a securitized trust, which has caused the identity of Note or Mortgage to be forever lost.

58. Upon information and belief, the Promissory Note l Mortgage were placed in trusts that are set up to optimize the revenues of a securitized mortgage pool, interested investors and certificate holders.

59. The profits generated off of the Promissory Note (now security) and Mortgage was not shared with Plaintiff although it is all based off of PlaintifF s credit and the undersigned signature.

60. There is no provision in the Mortgage agreement that allowed the "Lender" and assigns to profit off of PlaintifFs assets.

61. The undersigned was not given notice of his negotiable instruments being securitized for profit.

62. The undersigned is informed and believes that Defendant and Defendant's predecessors established a policy to profit from the Note/Mortgage by keeping the alleged "borrowers" ignorant of what transpired after closing.

63. Upon information and belief, once the Note/Mortgage were sold and securitized in trust, divided into pieces and sold to investors in the form of certificates, the "securities" were sold on the secondary market.

64. The undersigned's investigation on the subject led to the discovery that the secondary market is unregulated.

65. The undersigned is unable to ascertain with certainty who the real party of interest is on the Note/Mortgage, or which parties have purchased an interest in the Note/Mortgage through credit default swaps, collateralized debt obligations, or credit enhancement policies.

66. The undersigned further discovered that due to the splitting, selling, trading and insuring of the pieces of the Note/Mortgage on the secondary market, the Mortgage is split from the Note at closing and neither instrument are enforceable in a foreclosure proceeding.

67. Under Trust Law, Defendant, as Trustee of a securitized trust, is not the beneficiary.

68. There is no proof provided to the undersigned upon request that Defendant is in possession of the undersigned's original, unaltered Promissory Note.

69. There is no proof in the public record that Defendant is in possession of the Plaintiffs original, unaltered Promissory Note.

70. Defendant is a "debt collector" as defined by 15 USC § 1692, et seq.

71. The Assignment of Mortgage is fatally flawed and is fraudulent.

72. Defendant had no standing to foreclosure on the Note, Mortgage and the Property.

73. Defendant did not incur an injury caused by Plaintiff.

74.     Plaintiff was/is a victim of Fraud in the Factum since the misrepresentations caused Plaintiff to obtain the alleged "loan" without accurately realizing the risks, duties, or obligations incurred due to intentional non-disclosure of material facts.

75.     The Defendant in this matter will not incur a financial cost or damages by Plaintiff's failure to pay the alleged balance due on the Note in this matter since Defendant and Plaintiff never had a contract together, and the Mortgage does not obligate Plaintiff to Defendant.

76.     Defendant has no standing to foreclosure when it is not the real party in interest and it has not proven it is in possession of the original Promissory Note and Mortgage.

77.     Defendant is attempting unjust enrichment by continuing to benefit from financial gain by not providing the Note with all markings, stamps, Registration/Certification of Security number, Title Page and chain of endorsements and title to Plaintiff.

78.     Plaintiff submits that a person/entity purchasing a loan in default must be questioned.

79.     Such a purchaser stands to realize financial gains by credit enhancements (default insurance, etc., if it has not already occurred) and profits from foreclosure.

80.     Upon information and belief, double dipping in this manner is illegal and constitutes unjust enrichment and fraud.

81.     The undersigned alleges that the Defendant knowingly participated in fraud, racketeering, and other crimes in a scheme to unlawfully take away Plaintiff's property.

82.     Defendant has committed various frauds and has stolen Plaintiff's home, which are felony crimes (see, 18 USC §§ 4, 241, 242, 513, 514, 2071).

83.     The undersigned is informed, believes, and alleges that at all times herein mentioned that Plaintiff is the rightful owner and entitled to possession of the Property.


# FIRST CAUSE OF ACTION

### THE FORECLOSURE IS VOID *AB INITIO* DUE TO UNLAWFUL COGNOVIT NOTES

84.     The undersigned re-alleges and incorporates by reference the above paragraphs as though set forth fully herein.

85.   Defendant has non-judicially foreclosed on the Note , Mortgage, (an alleged copy of original) and real property in accordance with the presumption that the cognovit clauses in the Note and Mortgage are valid.

86.   Under the authority of *Overmyer Co Inc. of Ohio v. Frick Company*, 405 U.S. 174 (1972) (hereinafter *"Overmyer"*), and subquent authority, the foreclosure in this matter is void.

87.   The terms/clauses contained in the Note and Mortgage are analogous in performance to cognovit notes (i.e., confession of judgment).

88.   The Note and Mortgage specifically robs the *unknowing* makers of the commercial instruments of certain or otherwise assured rights and remedies, including, but not limited to due process and redress by appeal.

89.   Pursuant to *Overmyer*, a maker of a confession of judgment voluntarily, intelligently, and knowingly waives due-process rights it otherwise possesses to prejudgment notice and hearing, and does so with full awareness of the legal consequences, when:

  a.   the cognovit does not involve unequal bargaining power or overreaching;

  b.   the agreement is not a contract of adhesion;

  c.   the cognovit provision is obtained for adequate consideration;

  d.   the cognovit is a product of negotiations carried on by parties with the advice of competent counsel; and

  e. the maker, despite cognovit, is not defenseless under state law.

90.   The undersigned avers that all five (5) elements required for a cognovit clause to be valid have been violated by Defendants to deprive Plaintiff of due process.

91.   As a direct verified explanation of the required points, which are incontrovertible and Defendant has no evidence proving otherwise, that:

  a. LENDING 1ST MORTGAGE, EMC MORTGAGE CORPRATION, CHASE, NDSC and Defendants had unequal bargaining power and Defendant's had overreached by:

  1. The undersigned are laypersons and as such did not have the requisite knowledge to discover Defendant's numerous acts of concealment and/or fraud concerning the "legal definitions" of words and/or language used in the Note and Mortgage documents;

  2. Defendants are familiar with the "legal definitions" of the words and/or language of the Note and Mortgage and purposely, with malicious intent,

confused the undersigned and misrepresented the meanings of numerous words and/or the functionality of the language in the mortgage documents.

    3. Defendants had overreached the potential of the undersigned's understanding of the Note and Mortgage and the words and/or language used in the Mortgage as said Mortgage was obviously designed and written in such a way to purposely confuse laymen/women;

    b. The Note and Mortgage are adhesion contracts as LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION and Defendants refused to allow any change to the mortgage documents.

    c. There can be no adequate consideration when nothing is given for something. LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION and Defendants required Plaintiff to unknowingly give up PlaintifF s right to a due process hearing, etc., yet LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION and Defendants gave nothing in return for Plaintiff's aborted due process rights.

    d. The undersigned did not voluntarily, intelligently, and knowingly waive any due-process rights.

    e. The mortgage is not a product of negotiations carried on by parties with the advice of competent counsel.

    f. Defendant's non-judicial foreclosure, and therefore his defense are based solely upon the claim that Plaintiff is defenseless under state law due to the "confession of judgment" clauses in the Note/Mortgage.

92. Under *Overmyer,* it is impossible for this Court or a jury to determine the Note and Mortgage in question are valid cognovit notes unless this court determines that:

    a. Defendants and Plaintiff had equal bargaining power and Defendants requests in the Note and Mortgage were not overreaching;

    b. Plaintiff could have altered the terms and conditions of the Note and Mortgage and LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION and Defendants would have still consummated the deal;

    c. Plaintiff was adequately compensated for its loss of due process rights and that the undersigned understood they were voluntarily, knowingly, and intelligently agreeing to said loss of due process rights;

    d. Plaintiff was advised by a BAR attorney throughout the mortgage process; and

e. Plaintiff has a defense against the cognovit clauses based in law irrespective of Defendant's claims.

93. The undersigned avers that absent a conclusion based in fact and law that all five (5) elements of a cognovit clause have been met, then this Court or jury can only conclude that the Note and/or Mortgage in question are VOID *ab initio* and that Plaintiff is the true lawful owner of the real property in question.

94. Defendant has committed various frauds and has stolen Plaintiff's home, which are felony crimes (see, 18 USC §§ 4, 241, 242, 513, 514, 2071).

## SECOND CAUSE OF ACTION

PLAINTIFF'S OBJECTION TO THE PROMISSORY NOTE: THE PROMISSORY NOTE AND MORTGAGE NOTE, AS PRESENTED BY DEFENDANT'S AGENT, DOES NOT EVIDENCE PLAINTIFF'S AUTOGRAPH: A FRAUD IS BEING PERPETRATED BY DEFENDANT TO FORECLOSE.

95. The undersigned re-alleges and incorporates by reference the above paragraphs as though set forth fully herein.

96. For the record, the alleged Promissory Note presented to Plaintiff's by Defendant's counsel is not Plaintiff's Promissory Note.

97. The Note is not a true representation of the note Plaintiff signed, but is a counterfeit security.

98. Defendant has foreclosed on the Note, Mortgage and the Property with a counterfeit security, which is a crime.

99. The fact that the "loan" was securitized, there is reason to believe that Defendant is not in possession of the original Note and Mortgage.

100. Defendant has committed various frauds and has stolen Plaintiff's home, which are felony crimes (see, 18 USC §§ 4, 241, 242, 513, 514, 2071).

101. This Court must not allow this fraud to stand. The introduction of the alleged original Promissory Note (which it is not) must be stricken from the record due to the fraud as noted herein. Defendant has come forth without legal authority to foreclose and with unclean hands. Sanctions of treble damages should be imposed against Defendant and its alleged counsel.

102.   To obtain relief and not be the real party in interest, Defendant must have standing under Minn. R. Civ. P § 17.01 [Real Party in Interest]:

> Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

## THIRD CAUSE OF ACTION

No STANDING: DEFENDANT IS NOT OWNER OF PROMISSORY NOTE: DEFENDANT IS NOT THE REAL PARTY IN INTEREST IN THIS MATTER: DEFENDANT IS A TRUSTEE OF AN ASSET BACKED SECURITIES TRUST. A TRUST THAT PLAINTIFF DID NOT CONTRACT WITH.

103.   The undersigned re-alleges and incorporates by reference the above paragraphs as though set forth fully herein.

104.   Plaintiff has no knowledge, record or belief that Defendant had proper, constitutional standing to foreclose, and Plaintiff believes that no evidence to the contrary exists.

105.   A definition of trust can be found in the *Restatement of the Law on Trusts,* Second Edition: Defendant, as Trustee, meets none of the standing criteria set forth in the statute. Therefore, there was no legal standing to foreclose in the first instance.

106.   Defendant was without legal standing and without the capacity to enforce the Promissory Note and Mortgage. Standing and the real-party-in-interest requirement are related, but not identical concepts.

107.   Standing encompasses both constitutional and prudential elements. [8]

108.   Defendant filed their NOTICE OF MORTGAGE FORECLOSURE SALE when DEFENDANT did not have standing and made material misrepresentations to Plaintiff and the public.

109.   DEFENDANT did not have standing and made material misrepresentations to Plaintiff and the public.

[8] *See, e.g., Warth v. Seldin,* 422 U.S. 490, 498-99 (1975).

110.   Under trust law, the trustee (Defendant) cannot be the owner and holder of the Note and Mortgage.

111.   The trustee of a trust cannot also be the beneficiary; that would automatically terminate the trust. [9]

112.   Defendant is not the trust.

113.   Defendant is a trustee over the trust, a trust that Plaintiff did not contract with.

114.   Plaintiff did not consent to the *res* (Note and/or Mortgage) being cut-up and commingled with thousands of the other securities in a securitized trust, which has caused the identity of Note or Mortgage to be forever lost.

115.   To have constitutional standing, the litigant must allege an "injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." [11]

116.   "To have standing to bring claim, a person must have suffered some injury in fact as a result of the alleged actions." [12]

117.   Prudential standing includes the idea that *the injured party must assert its own claims,* rather than another's. [13]

118.   The real-party-in-interest doctrine generally falls within the prudential standing doctrine.

119.   That is, as "a prudential matter, a plaintiff must assert 'his own legal interests as the real party in interest as found in Fed. R. Civ. P. 17[.]'" [14]

120.   The true *res* cannot be produced since it has been securitized and commingled; hence, the alleged Note and Mortgage presented to foreclose by Defendant are counterfeit.

---

[9] "Where the trustee (the holder of legal title) and the beneficiary (the holder of full equitable title) are or become one and the same person, the legal and equitable titles merge, *defeating the trust* and creating a fee simple absolute in the trustee-beneficiary, who thus holds outright and free of trust. [Rest. 3d § 69]" *(Gilbert Law Summaries, Trusts,* page 41, 13th Edition (2008) (emphasis added)).

[11] *Davis v. Fed. Election Comm'n,* _U.S. ---, 128 S. Ct. 2759, 2768 (2008).

[12] *Epland v. Meade Ins. Agency Associates,* 564 N.W.2d 203,208 (Minn. 1997). [13] *See, e.g., Warth,* 422 U.S. at 499.

[14] *In re Mitchell,* 2009 WL 1044368, at 2; citation omitted).

121.   If Defendant, as Trustee, is somehow deemed to be the real party in interest in this matter by this Court, Defendant failed to present the proof to sustain its standing *(Plaintiff demands that Defendant present the following documents with it's answer to this complaint to prove it had standing to foreclose):*

a.   Certified proof to show the date Defendant came into possession of the Promissory Note since Defendant is not the original "lender," and proof that it is holding PlaintifFs original, unaltered Promissory Note.

b.   A copy of Title Page to the Promissory Note, the front and back of the original Promissory Note, and **all allonges** that will show the history of the Promissory Note to establish chain of title.

c.   The 2046 balance sheet as it relates to the original loan, which will show the ledgering of the account from beginning to present and will show when Defendant took over the account.

d.   The 424 B-5 prospectus (security filing); if Defendant is holder in due course, the Security Exchange Commission should know about it since the Promissory Note has been transformed into a security via the unauthorized indorsement.

e.   Defendant failed to present the IRS 10990ID and 1099A reports that will identify who the principal is from, which capital and interest was taken, and who the recipient or payer of the funds are, and who is holding the account in escrow, unadjusted.

f.   The S3-A Registration Statement under the Securities Act of 1933: This report will show when and where the Promissory Note was sold. Since the Promissory Note has been securitized without notice to Plaintiff, it is now a security, and the same should be registered with SEC.

g.   F ASB (Financial Accounting Standards Board) part of GAAP (Generally Accepted Accounting Standards): FASB 133, 140, 5, 95. These will direct the auditor to the liability side of the "creditor's" books and also creates the trail of exactly where the money came from, where it went, and who has a beneficial interest in the security. These supporting records that would show ownership of the security, particularity F ASB 140 *(Accounting for Transfers and Servicing of Financial Assets and Extinguishments of Liabilities)*

h.   A certified copy of the **bond** that Defendant purchased to insure this "loan," and copies of any payments made to date.

122.   Bottom line: Defendant is a Trustee and it does not and cannot legally own the Promissory Note and Mortgage, as it is acting on behalf of the investment trust by its own admission.

123.   Defendant has foreclosed by "false, deceptive, or misleading representation or means" in connection with the collection of an alleged debt, in violation of the Federal Fair Debt Collection Practices Act, 15 V.S.C. §1692(e).

124. From Defendant's own filings in this action, it is established that a person other than the Defendant is the alleged owner of the *res* at the time Defendant actually filed the NOTICE OF MORTGAGE FORECLOSURE SALE, and that Defendant is not and never was the real party in interest, and is not and cannot be shown to be the proper authorized party to foreclose in this matter.

125. In this case, Defendant was without standing or jurisdiction to foreclose.

126. Defendant, a trustee, has perpetrated a fraud with the sole purpose of stealing PlaintifFs property.

127. Defendant has committed various frauds and has stolen PlaintifFs home, which are felony crimes (see, 18 USC §§ 4, 241, 242, 513, 514, 2071).

# FOURTH CAUSE OF ACTION

### DEFENDANT HAD NO RIGHT OF SUBROGATION IN MATTER

128. There is no proof in the public record that Defendant has paid the entire mortgage debt in full upon the alleged assignment of the Mortgage Deed. [24]

129. Defendant was under no legal obligation or liability to pay the alleged debt in this matter.

130. Defendant is a stranger to the transaction, and, if it paid the debt (no bill of sale; no proof in the record that the alleged debt was actually paid), Defendant would have volunteered the same.

131. The Note and Mortgage did not put Plaintiff in contract with Defendant.

132. Defendant allegedly purchased (how much, the public record does not reflect) the security at its own risk.

133. The Note and Mortgage do not obligate Plaintiff to Defendant in any manner and Defendant was not protecting any interest by purchasing the Mortgage Deed.

134. Defendant has no right of subrogation in this matter.

135. Defendant, as a result of having no contract with Plaintiff and having no right of subrogation, did not have a right to foreclose on the Note, Mortgage and claim title to the subject property.

136. Defendant has committed a fraud and has stolen Plaintiff's home, which are felony crimes (see, 18 USe §§ 4, 241, 242, 513, 514, 2071).

137. Defendant, if it is deemed to be the real party in interest (although the undersigned deems otherwise), was under no legal obligation or liability to pay the alleged debt in this matter; hence, Defendant, again, is a stranger to the transaction, and, if it paid the debt (no proof in the record that the alleged debt was actually paid), Defendant volunteered the same.

138. Defendant had no rights or standing to foreclose in this matter whatsoever.

139. The foreclosure must be annulled/dismissed/stricken from the record, with prejudice, **due to Defendant's unclean hands,** it's alleged lien discharged and clear title given to Plaintiff.

---

[24] See, 73 Am Jur 2d, Subrogation, § 90. "One who pays off a mortgage or encumbrance which the principal debtor has failed to discharge may be entitled to subrogation, provided, of course, he is not a mere volunteer and provided the entire mortgage debt is paid ... This right of subrogation may exist in favor of one who pays the encumbrance to protect his own interest in the property, or who makes the payment because he is secondarily liable for the debt or for the discharge of the lien, or where the payment is made pursuant to an agreement, express or implied, for subrogation" [emphasis added; citations omitted]. See also 73 Am Jur 2d, Subrogation, §§ 91-93.

## FIFTH CAUSE OF ACTION

### INJUNCTIVE RELIEF AGAINST DEFENDANT

140.   The undersigned re-alleges and incorporates by reference the above paragraphs as though set forth fully herein.

141.   Defendant does not have standing or enforceable right to enforce the Note and any incidental right to collateral so as to foreclose on Plaintiff's property, including without limitation, finalizing the Sheriff's Sale relative to the Property.

142.   Defendant threatens to, and unless restrained, will evict Plaintiff from their home by finalizing the Sheriff's Sale relative to the Property.

143.   Any such action would result in a new cause of action for "wrongful foreclosure," cause irreparable harm to Plaintiff, and will cause pecuniary compensation that will not afford adequate relief because Plaintiff's home is unique.

144.   Due to the manner in which Defendants deceived the undersigned into a fraudulent contract that it never fulfilled, in great part caused the undersigned's ruination financially, and to physically remove the family from their shelter would cause irreparable harm to the undersigned's family.

145.   Injunctive relief is therefore necessary to enjoin Defendant from foreclosing upon Plaintiff's home since Defendant lacks standing and any enforceable rights under the Promissory Note.

## EIGHTH CAUSE OF ACTION

<u>NOTICE OF REVOCATION OF SIGNATURES DUE TO FRAUD, LACK OF NOTICE, ETC., THEREBY
TERMINATING THE TRUSTS.</u>

146.   The undersigned re-alleges and incorporates by reference the above paragraphs as though
set forth fully herein.

147.   Due to the discovery of various elements of fraud, fraudulent inducement, fraudulent
misrepresentation, entrapment, and nondisclosure by LENDING 1ST MORTGAGE, EMC
MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING
CORPORATION  and Defendants and/or by any of its agents and/or assignees, Plaintiff
hereby refuses to knowingly accept, or otherwise participate in ANY part of fraud and
other wrongful actions involving the purported Promissory Note and Mortgage.

*148.*   Accordingly, for the reasons outlined in this section, Plaintiff hereby revokes, rescind,
and terminate all of their signatures relating to any/all said Promissory Note and
Mortgage documents and other concurrent agreements *nunc pro tunc* from their
inception, thereby rendering said documents and agreements void *ab initio.*

*149.*   In item Number One of the *alleged* original Promissory Note ("Borrower's Promise to
Pay") , it states: *"In return for a loan that I have received ... "*

150.   Plaintiff's signing of the Promissory Note with that clause (which is false) was an
oversight and a mistake (now corrected herein via revocation/rescission of signature)
since Plaintiff <u>did not receive </u>a loan from LENDING 1ST MORTGAGE, EMC
MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING
CORPORATION  and Defendants  <u>prior to </u>(nor subsequent to) Plaintiff signing the
Promissory Note.

151.   The Promissory Note unequivocally asserts that Plaintiff had already received an alleged
"loan" as of the date the note was signed, that the referenced "loan" had occurred before
the promissory note was signed.

152.   Plaintiff is not the recipient of any loan proceeds or loan disbursement in any form from
LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE,
NATIONAL DEFAULT SERVICING CORPORATION  and Defendants  prior to the
signing of the Promissory Note.

153.   Plaintiff is unable to find loan disbursement instructions, loan disbursement confirmation
or a receipt of said loan in any form.

154.   Defendant in its answer to this complaint is invited to provide the loan disbursement
instructions, loan disbursement confirmation or receipt of said loan prior to Plaintiff
signing the promissory note. Failure to provide said documentation shall be deemed that

155. The referenced "loan" in the Promissory Note was an event that allegedly had occurred at some unspecified date *prior to MAY 10* ,2006, the date an original, unaltered Promissory Note was signed by Plaintiff, and that said note *cannot* be relied upon as evidence that "a loan" was, in fact, received, particularly since the note merely asserts that a loan "was received" by Plaintiff *before MAY 10*, 2006, *but provides no evidence that a loan disbursement ever occurred.*

156. A "loan" had not been provided to Plaintiff and that Plaintiff has not received a loan as of the date the Promissory Note was signed.

157. The author of the Promissory Note that was presented to Plaintiff falsely, fraudulently and deceptively stated that Plaintiff had received a loan prior to their signing said note when, in fact, *no loan had been given to Plaintiff* LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION and Defendants.

158. Accordingly, when LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION and Defendants agents presented the Promissory Note to Plaintiff, LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION and Defendants knew or should have known the statement *"In return for a loan that I have received ... "* was false.

159. Plaintiff has recently learned the true nature of "loans" made by banks.

160. Banks are required to adhere to *Generally Accepted Accounting Principles ("GAAP")*[5], and that GAAP follows an accounting rule that lies at the heart of the double-entry bookkeeping system called the Matching Principle.

161. Under GAAP, when a bank accepts bullion, coin, currency, checks, drafts, promissory notes, credit card applications or any other similar instruments from customers, and then deposits or records the instruments as assets, it must record offsetting liabilities that match the newly deposited assets.

162. Under GAAP, the liabilities (demand deposits account) represent the amounts that the bank owes the depositors or customers (i.e., the funds accepted from customers).

[25] See 12 USC § 1831n(a)(2(A) and 12 CFR § 621.

163. Under GAAP, funds advanced to alleged "borrowers" are created by banks based upon the monetizing of negotiable instruments (i.e., promissory notes, mortgage notes, credit card applications, bonds or any type of negotiable instrument), and this is done by debiting the amount into the banks' asset account and crediting a liability (a demand deposit account) merely for the face value of the executed negotiable instrument, and that the bank never transferred any money from its own account or of depositors' accounts to fund the transaction.

164. Defendant is invited, with its answer, to produce a *certified,* GAPP compliant accounting ledger showing that LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION and Defendants gave Plaintiff a loan from its Net Worth Account *before* the signing of the Promissory Note or *after* the signing of the Promissory Note.

165. Plaintiff signed and executed a negotiable instrument and unknowingly gave it to LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION and Defendants *without consideration* who simply monetized the Promissory Note by crediting bank liability (demand deposit account) in Plaintiff's name and LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION and Defendants did not disclose this fact to Plaintiff that the bank was only using the value of the Plaintiff own deposit (demand deposit account) to give their account liquidity.

166. Moreover, 12 use § 1813 (1)(1) announces that when a promissory note is deposited, it becomes a cash item to the bank; hence, the depositor is supposed to get a receipt for depositing the same, which LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION and Defendants did not provide to Plaintiff.

167. Plaintiff's undisclosed demand deposit account is nothing more than a checking account and/or debit card transaction where Plaintiff is actually the depositor and is entitled to have access to withdrawal or usage just like any depositor would if depositing money into their own checking account.

Under GAAP, GPMF deposited Plaintiff's Promissory Note as a cash item and recorded said note as a liability (Demand Deposit Account) in the bank's payables account and identified Plaintiff as the Creditors of the account. LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION and Defendants did not make this fact known to Plaintiff, and Plaintiff

MONEY," page seven, " .•. demand deposit accounts are not legal tender .•. " If a promissory note is legal tender, LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION and Defendants should have accepted it to discharge the Mortgage and the deal was done at closing.

169. LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION and Defendants changed the currency from the money deposited, (promissory note) to check book money (liability the bank owes for the promissory note deposited) forcing Plaintiff to labor to pay interest on the equity, in real property (real estate) that LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION and Defendants received for free.

170. This cost was not disclosed to Plaintiff in NOTICE TO CUSTOMER REQUIRED BY FEDERAL LAW, Federal Reserve Regulation Z. This is fraud.

171. The loan agreement that LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION and Defendants had Plaintiff to sign indicated a "LOAN."

172. LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION and Defendants broke that agreement.

173. LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION and Defendants took control of the Promissory Note without loaning lawful money or legal tender to Plaintiff.

174. LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION and Defendants then deposited the Promissory Note in an account it opened under Plaintiff's name without Plaintiff's knowledge or consent.

175. LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION and Defendants withdrew the money without Plaintiff's authorization or knowledge.

176. LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION and Defendants then claimed that checks issued to the seller of the subject property were their property, which is a fraudulent conversion.

177. The promise of a loan from LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION

178. Plaintiff has not received a loan to date from LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION and Defendants , and Plaintiff and cannot produce any documents that would show that it gave Plaintiff a loan of lawful money or legal tender *prior to or after* PlaintifF signing the Promissory Note.

179. A contract is illusory when the contract is "conditional on some fact or event that is wholly under the promisor's control and his [or her] bringing it about is left wholly to his [or her] own will and discretion ... " [26]

180. If the promise of either party in contract is illusory, the contract is unenforceable. [27]

181. Plaintiff was coerced into signing documents without any knowledge that a fraud and other felony crimes have been perpetrated upon Plaintiff.

182. Based on LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION  and Defendants conduct, it is guilty of Actual Fraud, Constructive Fraud, Intentional Fraud, Fraud in the Factum, Fraud in the Inducement, Fraud in the Execution, Breach of Contract, Material Misrepresentation, Deceit, Mail Fraud, Unconscionable Contract, Non-Disclosure, Lack of Contract Consideration, Grand Larceny, Unjust Enrichment, Breach of Fiduciary Duty, Bank Embezzlement, Unlawful Conversion, and Racketeering.

183. A promissory note falls under NEVADA Stat. as a negotiable instrument; however, once it securitized, it falls under  as a security.

184. LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION  and Defendants has illegally sold Plaintiff's Promissory Note as an **un-registered** security, a SEC violation.

---

[26] *Nodolfv. Nelson,* 103 Wis.2d 656, 660, 309 N.W.2d 397 (Wis. App., 1981) (citation and quotation omitted).

[27] See, e.g., *McGlone v. Motorist Mutual Insurance,* 2001 OR 1609 at ~ 42 (ORCA, 2001) ("An illusory promise is a promise that lacks consideration and thus, is unenforceable. *Hilton v. Tire Tread Development, Inc. et al, (1993),* Portage App. No. 92-P-0053, unreported."); *Office Pavilion South Florida, Inc. v. Asal Products, Inc.,* 849 So.2d 367 (Fla. App. 4th Dist., 2003).

185.    Under the U.S. Securities Laws, specifically The Securities Act of 1933, the mere offer to sell a security - unless there is an effective registration statement on file with the SEC for the offer - can be a felony subjecting the offeror to a five-year federal prison term. See the Securities Act of 1933, Section 5(c) Sales and deliveries after sale of unregistered securities is unlawful (Section 5(a)) as is failure to deliver a prospectus (Section 5(b)). The selling of un-registered securities is an automatic Right of Rescission of the original contract.

186..  LENDING 1ˢᵗ MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION  and/or DefendantS have violated Title 18 USC §§ 472-472:

18 USC § 472: Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined under this title or imprisoned not more than 20 years, or both.

18 USC § 473: Whoever buys, sells, exchanges, transfers, receives, or delivers any false, forged, counterfeited, or altered obligation or other security of the United States, with the intent that the same be passed, published, or used as true and genuine, shall be fined under this title or imprisoned not more than 20 years, or both.

18 USC § 474: Whoever, with intent to defraud, makes, executes, acquires, scans, captures, records, receives, transmits, reproduces, sells, or has in such person's control, custody, or possession, an analog, digital, or electronic image of any obligation or other security of the United States is guilty of a class B felony.

187. LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, and Defendants are also in violation , for neither were/are a holder in due course: " ... a person does not acquire rights of a holder in due course of an instrument taken by legal process or by purchase in an execution."

188. LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, and Defendants had no right to sell the Promissory Note for two reasons.

   a. The Promissory Note was deposited (12 USC § 1813 (1)(1)) and the money was withdrawn without PlaintifFs knowledge or authorization and;

   b. The contract was never fulfilled. LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, and Defendants acted *without proper notice* to Plaintiff and without PlaintifFs consent and is involved in a fraud thereby damaging Plaintiff.

189. Due to LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, and Defendants criminal conduct in the first instance, the original Promissory Note and Mortgage Contract are void *ab initio;* hence, Defendant never had a valid claim against Plaintiff in the first instance.

190. Defendant is not without fault in this matter.

191. Based on PlaintifFs understanding, as a matter of course, buyers of Notes accept the same without recourse; hence, the purchaser of the Notes accepted the liabilities that are attached to the instruments.

192. Defendant is well aware of how "loans" are originated.

193. Defendant knew or should have known that the Promissory Note and Mortgage it allegedly purchased are invalid on the face since banks and other financial institutions that interact with the Federal Reserve System **do not,** by law and regulation, lend lawful money or legal tender in residential "loan" transactions.

194. The fact in the preceding paragraph is proven by the Truth-In-Lending Statement given to the undersigned at closing, yet Defendant proceeded with the transaction of fraud thereby rending Defendant an accessory to the crimes committed by GPMF.

195. Defendant is in the business of purchasing and servicing, among other instruments, invalid residential mortgages and notes/securities.

196. This unlawful practice is routine in the mortgage business; that Defendant knowingly and willingly engaged in the business of acquiring and servicing invalid residential mortgages and notes/securities.

197. When LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION and Defendants said through the Truth-in-Lending Statement that they gave Plaintiff credit, LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION and Defendants meant it credited Plaintiff's transaction account, leaving one with the presumption that LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION and Defendants deposited other depositors' money in the account.

198. The fact is LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION and Defendants deposited Plaintiff s money (the promissory note).

*199.* LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION and Defendants or any assign cannot claim it owns the Promissory Note until it actually lends Plaintiff their money; to date, *this was not done.*

200. Defendant accepted AMERICAN HOME MORTGAGE ACCEPTANC, INC and Defendants liability when it *allegedly* purchased the Promissory Note and Mortgage.

201. Pursuant to the foregoing facts and criminal acts of fraud and other felony crimes noted herein this complaint, EFFECTIVE IMMEDIATELY THE UNDERSIGNED DOES HEREBY PUBLICLY REVOKE AND RESCIND AND MAKE VOID ALL SIGNATURES INCLUDING ALL INITIALS, MARKS ETC., on the Form 1003 (mortgage application), all mortgage documents defendants signed, including the Promissory Note, Mortgage Contract and the Power of Attorney.

202. THAT THE UNDERSIGNED'S REVOCATION OF SIGNATURES CONSTITUTES RESCISSION OF SIGNATURE.

203. ACCORDINGLY, AS A RESULT OF THE REVOCATION/RESCISSION OF THE SIGNATURES, THE PROMISSORY NOTE AND MORTGAGE, RELATED DOCUMENTS AND THE RELATED POWER OF ATTORNEY NO LONGER EXIST AND SAID DOCUMENTS HAVE NO LEGAL FORCE OR EFFECT DUE TO FRAUD.

204. "Fraud vitiates the most solemn contracts, documents and even judgments." 28

205. "It is not necessary for reSCISSIon of a contract that the party making the misrepresentation should have known that it was false, but recovery is allowed even though misrepresentation is innocently made, because it would be unjust to allow one who made false representations, even innocently, to retain the fruits of a bargain induced by such representations." 29

206. "Any false representation of material facts made with knowledge of falsity and with intent that it shall be acted on by another in entering into contract, and which is so acted upon, constitutes 'fraud,' and entitles party deceived to avoid contract or recover damages." 30

207. Defendant and/or any other unknown party that has an alleged interest in the Mortgage Agreement or Promissory Note do not have a lawful/legal lien against Plaintiff's property.

208. Plaintiffs have formally and publicly removed the aforementioned signatures for all time and removing any nexus that Defendant and/or any assign, successor, agent or representative may assume or presume to have over Plaintiff by virtue of the undersigned's signatures and the Social Security Number assigned to Plaintiff.

209. That Plaintiff **waive and reject any and all benefits and/or privileges** expressed, implied or otherwise arising from any such signatures, all subsequent contracts, agreements or trust(s), known and unknown, resulting from force, under threat of being denied access to Plaintiff's own credit among others, involuntary servitude and peonage by adhesion contract, committed against Plaintiff.

**RELIEF REQUESTED**

**WHEREFORE,** Plaintiff having set forth the claims and facts for relief against Defendant, moves this Court to grant the following relief against Defendant:

210. For exemplary and punitive damages to be determined by the Court or Jury for Fraudulent Inducement to the contracts, other frauds and crimes aforementioned herein;

211. Actual Economic and Non-Economic Damages;

212.   or a declaration of the rights of the parties relative to Plaintiff's property, including a declaration that Defendant has no enforceable lien against Plaintiff's property;

213.   For a preliminary injunction and permanent injunction enjoining Defendant, their agents, assigns, and all person acting under, for, or in concert with them, from evicting Plaintiff from their home or from finalizing the Sheriff's Sale;

214.   For cancellation/setting aside/annulling/dismissing of the sale and restitution of the home to the Plaintiff;

215.   For an Order, requiring Defendant to reinstate Plaintiff on title to their Property, and/or issue an immediate restraining order preventing Defendants and his, hers, or its agents, employees, officers, attorneys, and representatives from engaging in or performing any of the following acts, if applicable: (i) contacting any tenants, transferring any property or in any way adversely effecting Plaintiff's interest in the property in any manner; (ii) offering or advertising this property for sale; and/or (iii) attempting to transfer title to this property ;

216.   For other damages as provided by statute;

217.   For an Order enjoining Defendants from continuing to violate NEVADA statutes;

218.   For an Order to compel Defendant to answer this complaint, admitting and denying with particularity each and every allegation herein or suffer the ramifications of a default for failure to answer;

219.   For an Order to declare the so-called foreclosure claim, that could result in the transfer of property from Plaintiff to Defendant, Null and Void.

220.   For an Order Quieting Title in favor of Plaintiff.

221.   For an Order declaring that the Mortgage and Note Contracts and the Assignment of Mortgage in this matter are Null and Void.

222.   For an Order compelling Defendant to return the original Promissory Note to Plaintiff, in Court, for inspection and review of signatures and verify the representations made therein.

223.   For an Order that if the original, unaltered Note is not available, that Defendant be ordered to pay Plaintiff the face value of the Note with interest, plus the escrow and all the bond/security derivatives of the Note.

29  *Whipp v. Iverson*, 43 Wis.2d 166, 168 N.W.2d 201 (1969).

30  *Barnsdall Refining Corp. v. Birnamwood Oil Co.*, 92 F.2d 817 (7th Cir. 1937).

224. For an Order canceling the original Promissory Note under election of remedies for Fraud in Fact and a declaration and determination that Plaintiff is the rightful holder of title to the Property.

225. For an Order that Defendant's CPA demonstrate the specific form of payment used for the so-called funding of the loan with a certified copy of the GAAP certified ledger showing that the funds came from LENDING 1ST MORTGAGE, EMC MORTGAGE CORPORATION, CHASE, NATIONAL DEFAULT SERVICING CORPORATION and Defendants net worth account.

226. For an Order declaring that persons, known and unknown at this time, including Defendant have no estate, right, title or interest in the Property, and that Plaintiff is entitled to quiet and undisturbed possession of the property as described ante.

227. In the alternative, for an Order awarding Plaintiff under election of remedies for compensatory damages in the amount of $500,000 plus interest, plus three times punitive damages for recoupment of the payments previously tendered to Defendant's predecessor under usury.

228. For an Order awarding compensatory damages to be determined for time spent in legal research and composition of this action comparable to standard Attorneys allowances from Defendant on all counts.

229. For an Order for Punitive Damages against Defendant as applicable, as well as, compensatory and punitive damages under the Civil Racketeering Statutes in an amount to be determined at trial and sufficient to send a strong message that Defendant's conduct is repugnant to the people of Hennepin County, State of Minnesota.

230. For an Order granting injunctive relief from any parties moving against the Plaintiff and/or their real estate, including the property in question, without first proving to this Court that all the lawful requirements and statutory requirements for foreclosure and transfer of property have been met.

231. For an Order that if Defendant can uphold any valid claim upon Plaintiff or Plaintiffs property that the same be fully discharged and the property returned to Plaintiff by making proper claim under 46 USC § 748 whereby the United States Secretary of the Treasury is authorized to pay claims, and judgments, and for the return of property under 50 App USC §§ 7, 9, 32, the United States Attorney General is authorized to return property. These are the statutory remedies, as the peoples' remedy, for claims and seizures under the fractional reserve fiat monetary system. ORIGINAL COMPLAINT

FOR AN ORDER FOR DEFENDANT TO RETURN ORIGINAL, UNALTERED PROMISSORY NOTE WITH
ESCROW AND EQUITY IF FORECLOSURE JUDGMENT IS SUSTAINED:

232.   In the highly unlikely event that the Court or jury sustains Defendant's foreclosure
judgment, then the undersigned moves the Court, under equity, for an Order to
compel Defendant to produce and forward the following to the undersigned before the
passing of title since Defendant CANNOT, by common law or statutory law, foreclose
on the Account, Note, Mortgage and take the sale proceeds or take possession of the
subject property AND keep the Note (plaintifFs asset) and the escrowed and other monies
associated with the Note and derivative securities:

   a.   Return the Original, Unaltered Wet-Inked Signature Promissory Note (the
        undersigned's asset via his signature); it was not the undersigned's intent that
        Defendant should keep the Note after full payment or foreclosure, but for it to be
        returned in its original condition as presented/issued; because the Promissory
        Note is negotiable, the Note must be surrendered in a foreclosure proceeding so
        that it does not remain in the stream of commerce. [31]

   b.   Return the Original, Unaltered Wet-Inked Signature Mortgage;

   c.   Return: (1) the face value of the Promissory Note with interest[32]; (2) all escrowed
        monies with interest; (3) all derivatives and interest created from all bonds and
        security instruments created off of the Promissory Note/Security, including but
        not limited to the profits of the 24, 25 and 25A bonds (Bid Bond, Payment Bond,
        Performance Bond, respectively) created and sold for this cause and are currently
        located in private equity mutual funds; and (4), if applicable, the profits generated
        by the Real Estate Mortgage Investment Conduit (REMIC) or the Collateralized
        Mortgage Obligation (CMO) or the Mortgage Backed Security (MBS) in which
        the security deed has been pooled;

---

[31] See, e.g., *Perry v. Fairbanks Capital Corp.*, 888 So. 2d 725, 727 (Fla. 5th DCA 2004).

[32] This money, which the undersigned recently learned about, comes from the liability side of the account that was created
by the alleged original "lender" in Plaintiff's name (without his knowledge or consent) to deposit the note, which is a cash
item pursuant to 12 USC § 1813 (1)(1).

d. Return the equity, etc., that Plaintiff put into the subject property for a preliminary value of and in sum set certain of $505,500.00[33], together with interest thereon at the rate of seven percent (7%) per annum from date of purchase of subject property, which constitutes labor, services, and materials furnished by Plaintiff and/or others, since date of purchase of subject property, on and for the homestead, land, improvements therein and thereon, for labor, materials, and services for the upkeep and maintenance, payments, interest, taxes, fees, assessments, new construction, all repairs and replacements, and any and all improvements thereon and therein, for said land and homestead.

233. The foregoing Items in "a" through "d" in the above paragraph herein MUST be provided to the undersigned in order for Defendant to legally finalize the foreclosure sale and obtain clear title. Defendant is to forward the undersigned the foregoing Items in "a" through "d" in above paragraph herein before the transfer of title of the subject property.

234. Defendant's possession of clear title can legally take place only after Defendant provides the undersigned with Items in "a" through "d" in above herein.

235. If Defendant fails to oppose/answer the demand in paragraph 367 herein, with lawful/legal authority in support, shall be Defendant's tacit agreement that together (A) IT IS NOT ENTITLED to foreclose on the Note unless it first return Items in "a" through "d" in paragraph 232 herein to the undersigned; (B) that IT IS NOT ENTITLED to retain the original, unaltered Note and all monies noted in herein; and (C) that Defendant must return Items in "a" through "d" in paragraph 232 herein to the undersigned IF DEFENDANT IS TO ACQUIRE CLEAR TITLE IN THIS MATTER since Defendant cannot keep the money (the Note, the bond/security derivatives of the Note and Plaintiff's equity) and the subject property or the sale proceeds; pursuant to the Mortgage, Defendant must chose either the money or the subject property/sale proceeds, not both. The undersigned is entitled to just compensation for their equity expended in or on the subject property since 2006.

[33] All demands herein this document are stated in US Dollars (lawful money, not legal tender), which means that a US Dollar will be defmed, for the purposes of this demand as a One Ounce Silver coin of 99.999% pure silver, or the equivalent par value as established by law or the exchange rate as set by the US Mint, whichever is the higher amount, for a certified One Ounce Silver Coin (US Silver Dollar). The amount demanded is based only on sweat equity and monies paid on mortgages; due to time constraints, the undersigned was not able to gather all items together to present a fmal amount; this amount will therefore be amended, if necessary.

236.  If Defendant is unable to return Items in "a" through "d" in paragraph 232 herein to the undersigned, for an Order declaring that Defendant must forever release its claim and lien to the subject property.

237.  THE UNDERSIGNED FURTHER MOVES THE COURT to discharge or close out and zero out the Trust Accounts in this matter (court case and mortgage trusts), pursuant to PUBLIC POLICY regarding the discharging of commercial obligations, via the undersigned's Exemption Account, concerning any outstanding derivative obligations attached to said accounts unknown to the undersigned, and to eliminate all said records; and

238.  FOR THE COURT TO GRANT such other and further relief as the facts warrant in the

furtherance and interest of justice.

239.  Plaintiff seeks determination as of the date of filing of this complaint.


NOTICE TO OFFICERS/AGENTS OF THE UNITED STATES

THIS DOCUMENT IS NOT INTENDED TO THREATEN, HARASS, INTIMIDATE, OFFEND, CONSPIRE, BLACKMAIL, COERCE, CAUSE ANXIETY, ALARM, CONTEMPT OR DISTRESS, OR IMPEDE ANY PUBLIC DUTIES. IT IS PRESENTED WITH HONORABLE AND PEACEFUL INTENTIONS. ANY AFFIRMATION CONTRARY TO THIS VERIFIED STATEMENT OF FACTS WILL COMPRISE YOUR STIPULATION TO COMMITTING A FRAUD UPON THE COURT. VOID WHERE PROHIBITED BY LAW.


## VERIFICATION

I, SHAFQAAT BUKHARI, have read the foregoing and know the contents thereof. The same is true based on our own knowledge, except as to those matters which are therein upon information and belief, and as to those claims or facts, I believe them to be true.